

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CR-15-640

| | |
|---|---|
| | **Opinion Delivered** March 16, 2016 |
| KIRK DOUGLAS HARRIS, JR.<br>APPELLANT | APPEAL FROM THE STONE COUNTY CIRCUIT COURT [NO. CR-13-52] |
| V. | |
| | HONORABLE JOHN DAN KEMP, JUDGE |
| STATE OF ARKANSAS<br>APPELLEE | AFFIRMED |

## LARRY D. VAUGHT, Judge

Appellant Kirk Douglas Harris, Jr., was charged in the Stone County Circuit Court with attempted first-degree murder for allegedly stabbing and cutting Michael "Mike" Pringlemeir. Following a jury trial, Harris was convicted of attempted second-degree murder and sentenced to serve twenty years' imprisonment in the Arkansas Department of Correction and to pay a $15,000 fine. On appeal, Harris argues that the trial court, in limiting the cross-examination of Mike's wife, Rebecca "Becky" Pringlemeir, violated his right to confront his accuser and abused its discretion. We affirm.

Because Harris is not challenging the sufficiency of the evidence, only a brief summary of the facts is required. On June 25, 2013, Harris, Mike, and Becky were at the home of Melvin England drinking alcohol. Becky testified that Harris was on the phone with his girlfriend when Mike said, "Get off the phone with the whore." Becky saw Harris jump out of his chair and scuffle with Mike. Becky separated the men. She next saw Harris leave

the room, return with a large knife, and head toward Mike. Becky witnessed Harris stab Mike in the chest and back with the knife and cut his face from his mouth to his earlobe.

Harris raises one point on appeal—that the trial court erred in limiting his cross-examination of Becky. During her cross-examination, Becky stated that she started drinking alcohol around 6:00 p.m. and stopped drinking around 9:00 p.m. She stated that she was not intoxicated at any point during the night and that alcohol did not cloud her judgment or perception. She also testified that before the stabbing, she and Harris had sex while Mike watched. Defense counsel continued:

| | |
|---|---|
| DEFENSE COUNSEL: | I don't mean to harp on this issue but I just—I really want to know the extent of the drinking that was there, okay? Were you guys—were you drunk whenever you had sex [with Harris]? |
| WITNESS: | No. |
| STATE: | Judge, we'd object. Can we approach? |

. . . .

[Sidebar]

| | |
|---|---|
| STATE: | Judge, she's asked [Becky] this question once. She's answered. She answered again. . . . This is the third time. This is repetition. She's answered the question. It's done. It's clearly repetition. |
| DEFENSE COUNSEL: | I haven't asked her if she was drunk when she had sex. |
| STATE: | Judge, she's asked her what she's been drinking, it was established she was drinking beer. She had a couple of shots, she was drinking tea, she [was] pouring it down the drain, they've established the timeframe that she's been drinking. There is no longer a drinking question that she can ask. It's repetition at this point. This is the third time. I let it go once. |

. . . .

2

DEFENSE COUNSEL:    I don't think it's cumulative or redundant or anything to ask were you drunk when you were having sex. She's—I mean that's a legitimate question.

STATE:    I would object to relevance.

DEFENSE COUNSEL:    Is your judgment—is your judgment impaired on your having sex with another man in front of your [husband]. I mean, were you drunk then? . . .

STATE:    I would object to relevance on that. The fact that she's drinking or not while she's having sexual intercourse with another individual has no bearing of guilt or innocence on this defendant.

DEFENSE COUNSEL:    Well, it doesn't hurt credibility.

. . . .

STATE:    She's admitted that she had sexual relations with [Harris]. She's not denying it.

DEFENSE COUNSEL:    She's said she was sober, you know. And—I mean, and we talked about how alcohol affects your judgment. Well, I don't believe—you know, it's—I think it's a legitimate question to say were you drunk when you were having sex with another man in front of your husband. I mean, were you not impaired or what were you thinking?"

. . . .

She says she wasn't drunk and now—I mean, who [has] sex with—I mean, something was going on in her mind. I think it's a legitimate question whether or not she was functioning.

. . . .

COURT:    The Court sustains the objection.

On appeal, Harris first argues that the trial court violated his Sixth Amendment right to confront Becky by limiting her cross-examination. We cannot reach the merits of this argument, however, because Harris did not raise a Confrontation Clause argument below; accordingly, there was no ruling from the trial court on the issue. It is well settled that a party

is bound by the nature and scope of the objections and arguments made at trial and may not enlarge or change those grounds on appeal. *Stewart v. State*, 2012 Ark. 349, at 8, 423 S.W.3d 69, 74. Thus, we hold that Harris's Confrontation Clause argument is not preserved for our review. *See also Woodward-Kuhn v. State*, 2013 Ark. App. 757, at 3.

Harris next argues that the trial court abused its discretion in limiting Becky's cross-examination in violation of Arkansas Rules of Evidence 602 and 611. Specifically, he contends that limiting his cross-examination of Becky violated these rules because she "was the only witness who claimed to be sober and capable of accurate perception at the time her husband, the victim, was stabbed."[1] Therefore, according to Harris, she became the most important witness in the case, making her credibility, the extent of her sobriety, and her ability to perceive events critical issues. He points out that because Becky claimed she was not intoxicated when the stabbings occurred, in an effort to discredit her, he should have been able to ask her whether she was drunk when she had sex with Harris while Mike watched, which took place one hour before the stabbings.

Trial courts have broad discretion in deciding evidentiary issues, and their decisions are not reversed absent an abuse of discretion. *Marks v. State*, 375 Ark. 265, 269, 289 S.W.3d 923, 926 (2008). We will not reverse an evidentiary decision by the trial court in the absence of prejudice. *Id.*, 289 S.W.3d at 926.

---

[1] The testimony at trial revealed that England was passed out on the couch during the incident and that he was not called as a witness at trial. Mike did testify; however, Harris argues that Mike "remembered very few details because he was very drunk and[,] after he was stabbed[,] he lapsed in and out of consciousness."

Arkansas Rule of Evidence 611(b) (2015) provides that the scope of cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The crux of Harris's argument is that the trial court abused its discretion in limiting his cross-examination of Becky because he was seeking to discredit her. The scope of cross-examination extends to matters of credibility. *Jones v. State*, 349 Ark. 331, 339, 78 S.W.3d 104, 110 (2002) (citing Ark. R. Evid. 611). A matter is not collateral if the evidence is relevant to show bias, knowledge, intent, or interest. *Id.* at 339–40, 78 S.W.3d at 110. Proof of bias is "almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness's testimony." *Id.* at 340, 78 S.W.3d at 110 (citing *United States v. Abel*, 469 U.S. 45 (1984)). In other words, matters affecting the credibility of a witness are always relevant. *Id.*, 78 S.W.3d at 110.

While the State argues that the trial court's decision to limit Becky's cross-examination was not an abuse of discretion because the questioning was irrelevant, matters affecting the credibility of a witness are always relevant. *Jones*, 349 Ark. at 339, 78 S.W.3d at 110. And attacking Becky's credibility was at the heart of the questioning sought by Harris's counsel. Counsel was attempting to counter Becky's testimony that she was not intoxicated or impaired by questioning her about the sexual encounter she had with Harris while her husband watched, attempting to draw the inference that she had to have been intoxicated or impaired in order to engage in such conduct. Because Harris's efforts to discredit Becky during her cross-examination were limited by the trial court as irrelevant, we hold that the trial court abused its discretion.

5

The State also argues that the trial court's decision to limit Becky's cross-examination was not an abuse of discretion because the questioning was repetitive. The record reveals it was not. Becky was asked only one time whether she was intoxicated when she had sex with Harris.[2] The question immediately drew an objection from the State (set forth above). Accordingly, to the extent the trial court limited Becky's cross-examination because it was repetitive, we hold that the trial court abused its discretion.

Despite the trial court's abuse of discretion in limiting Becky's cross-examination, we must affirm because Harris cannot establish prejudice. *Marks*, 375 Ark. at 269, 289 S.W.3d at 926. Contrary to Harris's argument, Becky's testimony was not the only evidence of Harris's guilt. Mike testified that Harris stabbed him twice and cut him once. Also, a portion of Harris's recorded statement was played to the jury, wherein he admitted stabbing Mike twice and cutting him once. Because there was overwhelming evidence of Harris's guilt, independent of Becky's testimony, he did not suffer prejudice as a result of the trial court's error in limiting her cross-examination. Accordingly, we affirm.

Affirmed.

ABRAMSON and GRUBER, JJ., agree.

*Omar F. Greene*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Evelyn D. Gomez*, Ass't Att'y Gen., for appellee.

---

[2]Becky was asked several times whether she had been drinking the night in question, how long had she been drinking that night, and how much alcohol had she consumed. Additionally, she was asked more than once about her sexual encounter with Harris. While the State asked generally whether Becky felt that she was intoxicated at any point during the night, she was asked only once whether she was intoxicated when she had sex with Harris.